David P. Brooks (#012645)
Brooks & Affiliates, PLC
4320 East Brown Road, Suite 111
Mesa, AZ 85205
(480) 890-8195
dbrooks@brooksandaffiliates.com

Attorneys for Plaintiff TLC/Transitional Living
Communities

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TLC/Transitional Living Communities, an Arizona Non-Profit Corporation | No. |
| Plaintiff, | **Verified Complaint** |
| v. | **Jury Trial Demanded** |
| Arizona Department of Health Services, an agency of the State of Arizona; Don Herrington, in his official capacity as the Interim Director of the Arizona Department of Health Services, | |
| Defendants. | |

Plaintiff TLC/Transitional Living Communities ("TLC" or "Plaintiff") alleges the following against Defendants the Arizona Department of Health Services ("DHS" or "Department") and Don Herrington, Interim Director of DHS (collectively referred to as "Defendants"):

### Nature of Action

1.    This action seeks declaratory, injunctive and monetary relief against the Defendants because A.R.S. §§ 36-2061 to 36-2067 ("Sober Living Law") and the accompanying rules reflected in A.A.C. §§ R9-12-101 *et seq*. ("Rules") discriminate against TLC as a provider of housing for recovering alcoholics and drug addicts in violation of the federal Fair Housing Act, 42 U.S.C. §§ 3601. *et seq.*, the Americans With Disabilities Act, 42 U.S.C. §§12101 *et seq.,* and

the federal Rehabilitation Act, 29 U.S.C. § 794.  Moreover, the Department's efforts to enforce the Sober Living Law against TLC violates the equal protection clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

## Parties and Jurisdiction

2.      TLC is an Arizona non-profit corporation whose principal place of business is located in Mesa, Arizona.

3.      DHS is an agency of the State of Arizona charged with the responsibility to implement and enforce the Sober Living Law and Rules.  On information and belief, DHS receives federal funding in connection with its implementation and enforcement of the Sober Living Law and Rules.

4.      On information and belief, Interim Director Herrington is the interim director of DHS and is responsible to lead and oversee the operations of the Department.  Interim Director Herrington is sued in his official capacity.  Should a new director or interim director of the Department be appointed, Plaintiff will seek leave to name any successor to Interim Director Herrington.

5.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 3613, 12133, and 29 U.S.C. § 794.

6.      Venue is proper because the acts complained of occurred in this district.

## The Problem and TLC Background

7.      Substance abuse is among the most pressing societal issues in the United States. The Centers for Disease Control reported data from 2018 that shows 25.1 percent of adults aged 18 and over had at least one heavy drinking day (five or more drinks for men and four or more drinks for women) over the past year.  [CDC FastStats, Alcohol Use (Ex. 1)]

8.      The Centers for Disease Control reported data from 2018 showing that 11.7 percent of persons aged 12 years and over had used illicit drugs in the past month.  [CDC FastStats, Illicit Drug Use (Ex. 2)]

9.      The United States Surgeon General reported that 1 in 7 people will develop a substance use disorder at some point in their lives.  [Facing Addiction in America, The Surgeon General's Report on Alcohol, Drugs, and Health, reporting data from Center for Behavioral Health Statistics and Quality, 2016 (Ex. 3)]

10.     The United States Census reports an average of 2.6 people per household from 2016 to 2020.   [see www.census.gov/quickfacts/fact/table/US/HCN010212] Thus, statistically, on average, 1 person in every 2.6 households may include a person who develops a substance abuse disorder at some point in their lives.

11.     TLC was organized in January 1992 to address the challenge of drug and alcohol addiction described above.  TLC's founder, John Schwary, had been an addict himself and knew the struggles of life for an addict.

12.     TLC, among other things, helps alcohol and drug addicts work to overcome their addictions.   Since March 1992, TLC has provided housing and addiction treatment for approximately 500,000 clients in Arizona.  A hallmark of TLC's program is that it accepts any substance abuser who asks for help, whether they have money or not (except for arsonists or sexual offenders).  TLC's program includes these concepts:

      a.   A commitment by clients who choose housing in TLC's program to attend 90 12-step meetings in 90 days;

      b.   Complete a 12 week Big Book study;

      c.   Attend an 8-week relapse prevention class.

      d.   Submit to random drug screening at client's expense;

      e.   Attend 4 hours of in-house peer counseling each week; and

      f.   An obligation to work—whether by finding one's own job, working with TLC's labor group, or in some instances by volunteering in TLC offices and/or properties.

13.     TLC works with its clients so they can become sober, self-sufficient and develop the skills and confidence necessary to transition into the community at large.

14.     TLC, beyond providing low cost sober housing, also operates a treatment program that provides nursing services, substance abuse assessments, sober living with intensive chemical dependency treatment and many other treatment modalities.  Some TLC clients who live in TLC residences also participate in TLC's treatment program.   TLC's treatment program is duly licensed by DHS.

15.     TLC does not receive state or federal funding, except for insurance-based payments for clients of TLC's treatment center.

16.     Among others, TLC operates a property located at 132 South Robson, Mesa, Arizona 85210 ("Robson House").  The Robson House is a location where TLC helps female clients work to overcome their drug and alcohol addictions.  Some TLC clients who reside at the Robson House also receive treatment through TLC's treatment program.

17.     Currently, TLC provides housing and rehabilitation services to approximately 43 female clients at the Robson House.  The resident population of the Robson House varies as clients transition in and out of the program.

18.     TLC has had good relations with the City of Mesa and areas surrounding the Robson House.  TLC operates the Robson House (and other facilities) in compliance with local ordinances and requirements.

19.     Notwithstanding the vast scope of substance abuse and homelessness in the United States, TLC and other providers like it, have faced ongoing stereotypes and animus from communities, governmental entities and local residents because TLC houses legally disabled people who are addicted to drugs and/or alcohol and tries to help such individuals.  That ongoing animus reared its head again recently in connection with DHS's effort to enforce the Sober Living Law and Rules against TLC.

**Arizona's Sober Living Law**

20.     The Arizona Legislature passed Arizona's Sober Living Law (A.R.S.§ 36-2061 *et seq.*) in 2018 as Senate Bill 1465.  The Sober Living Law became effective on August 3, 2018.

21.     The Sober Living Law defines a sober living home (A.R.S. § 36-2061(3)); requires licensure for sober living homes (A.R.S. § 36-2062); precludes operation of a sober living home without a license (A.R.S. § 36-2062(D)); and includes a potential for a civil fine of up to $1,000.00 for each violation (A.R.S. § 36-2062(B)).

22.     The Arizona Legislature imposed an onerous statutory scheme for sober living homes in connection with the same bill where it amended A.R.S. § 9-500.39 to make it clear that a "city or town may not prohibit vacation rentals or short term rentals".  2018 Ariz. ALS 194; 2018 Ariz. Sess. Laws 194; 2018 Ariz. Ch. 194; 2018 Ariz. SB 1465.

23.     The Sober Living Law was designed not to benefit the providers of housing for recovering alcoholics and/or substance abusers, or the recovering persons themselves, but was enacted with discriminatory intent to protect uncomfortable neighbors from the presence of recovering addicts in their respective neighborhoods.

24.     The legislative history for S.B. 1465 (and previous proposals) reveals where the legislators' priorities were—favoring property owners' potential use of their property for almost anything including vacation and short term rentals and, at the same time, limiting and harming those who try to help others to recover from drug and alcohol addiction with an illegal and unnecessary statutory licensing scheme.

25.     The animus and discrimination directed towards TLC, its clients (and other providers like TLC) began around 2015.

26.     State Representative Noel W. Campbell was an initial sponsor to predecessor legislation.  Representative Campbell was from Prescott and said homes for drug and alcohol addicts in Prescott had become a problem in his city.  He claimed there were about 156 homes at one point, and said the residents of the homes were "drug abusers" and that their presence in the

community created a "clash of cultures" when such homes were located in older single family neighborhoods. He characterized the situation as "a problem that's going to come to your neighborhood sooner or later." [*Group homes housing recovering drug users, alcoholics face greater regulations,* Capitol Media Services March 2, 2016 (Ex. 4)]

27. The problem in Prescott included complaints by local community members about foul language, loud music and cigarette butts accumulating around sober living homes. Many took a "not in my backyard" approach to sober living homes. [*Arizona city stews over regulating sober living homes*, Arizona Capital Times June 13, 2016 (Ex. 5)]

28. Prescott adopted Ordinance No. 5006-1544 on or about October 11, 2016 that was designed to regulate sober living homes in the city. Among other reasons, Prescott cited concerns expressed by Prescott residents that they had been exposed to second hand smoke, noise, debris and poor conduct and lack of neighborly behavior by some residents of the local sober living homes. [Prescott Ordinance No. 5006-1544 at 2 (10/11/2016) (Ex. 6)]

29. The Prescott ordinance also mentioned that some providers of sober living facilities were bad actors who did not properly treat or care for those who were afflicted by drug and/or alcohol addiction. [*Id.*]

30. Thus, Prescott aggressively and discriminatorily regulated sober living homes and Representative Campbell reported that Prescott had reduced the number of such homes in the city from about 200 to fewer than 50. [*Got 'sober living' homes in your neighborhood? Arizona may begin licensing them*, Capitol Media Services February 15, 2018 (Ex. 7)]

31. The discriminatory stereotypes regarding sober living homes became at least part of the basis for why the Legislature considered, and ultimately passed, the Sober Living Law.

32. In an Economic, Small Business, and Consumer Impact Statement, it was reported that owners of homes where sober living homes were currently located "expressed concerns about the effect that sober living homes are currently having on their property values and the safety of their children. Some have commented that sober living homes should not be allowed in

residential neighborhoods . . . ."  [Economic, Small Business, and Consumer Impact Statement, Title 9. Health Services Chapter 12.  Sober Living Homes (referred to as "EIS"), submitted to the Governor's Regulatory Review Council at 11 (Ex. 8)]

33.    DHS has also written that the "new rules may provide a significant benefit to a homeowner or other resident of a neighborhood in which a sober living home is located.  [*Id.* at 12]

34.    On information and belief, a group known as "Take Action Phoenix", or "TAP" was involved in pushing for the Sober Living Law and its rhetoric reflected local animus directed towards sober living homes.  Even now, TAP's website wrongly characterizes sober living homes and instructs residents how to spot a "Group Home" or a "Sober Living Home" by looking for higher traffic, including UBER, LYFT, VEYO or rehab service vans; high numbers of cars on the street; seeing many people going to or from a home; loitering, trespassing or congregating in unauthorized areas; and noise coming from the property.  [*See link:*

http://www.takeactionphoenix.com/ ]

35.    In one hearing held by the Senate Health and Human Services Committee on February 16, 2018, Senator Kate Brophy McGee reported that they had been working on the bill (SB 1465) for about two years.  The report was made that sober living homes had proliferated across the state and were often located in residential areas.  The claim was that there were too many "bad actors" who viewed their patients as a source of money and not helping such individuals return to normal life.  [2/16/2018: Senate Health and Human Services in the video link below (*see also*, "SB1465-RTSComments-2022April06.docx (Ex. 9) where a list of speakers and their positions are listed)  video link at 2:52:44:

https://www.azleg.gov/videoplayer/?eventID=2018021251&startStreamAt=10240 ]

36.    On or about March 22, 2018, community representatives testified at a House Committee and reported that residents of a sober living home she was familiar with included a

number of problems like trash accumulation and people hanging around. [3/22/2018: House Health, video link at 3:20:

https://www.azleg.gov/videoplayer/?eventID=2018031233&startStreamAt=4250]

37.     On or about April 5, 2018, Representative Campbell emphasized the animus towards sober living homes when he voted on the bill, saying "[w]e're going to really clean up this industry . . . ." [4/5/2018: House Third Reading, video link at 9:30:

https://www.azleg.gov/videoplayer/?eventID=2018041135&startStreamAt=498 ]

38.     By following Prescott's lead and seeking to root out so called "bad actors", the Legislature passed a scheme that discriminatorily regulates long established providers of service to drug and alcohol addicts like TLC.  Examples are reflected in the statutes.

39.     A.R.S. § 36-2061 defines a "Sober living home" as "any premises, place or building that provides alcohol-free or drug-free housing and that: (a) Promotes independent living and life skills development. (b) May provide activities that are directed primarily toward recovery from substance use disorders. (c) Provides supervised setting to a group of unrelated individuals who are recovering from substance use disorders. (d) Does not provide any medical or clinical services or medication administration on-site, except for verification of abstinence."   The definition is discriminatory against providers, like TLC, who provide housing, peer-to-peer rehabilitation services and clinical treatment to clients (even if not provided in the home), by defining housing facilities provided by such providers, like TLC, as a "sober living home" and subjecting TLC to the licensing regimen of the Sober Living Law.

40.     A.R.S. § 36-2062, and the Rules discriminatorily impose obligations on sober living homes that are not imposed on similarly situated group or other home situations regulated by DHS.

    a.     A.R.S. § 36-2062(A)(3), requires the sober living home to have policies and procedures to "maintain an environment that promotes the safety of the surrounding neighborhood and community at large."  This language is vague and, on information and

1 belief, no other program under the regulatory auspices of DHS imposes similar requirements

2 on the regulated entity.

3          b.      A.R.S. § 36-2062(A)(4), when read with A.C.C. R9-12-201(B)(3)(o),

4 requires a sober living home provider to  plan for the termination of residency and requires the

5 sober living home provider to coordinate the relocation of a resident to another health care

6 institution, sober living home or "other housing option."   On information and belief, no other

7 program under the regulatory auspices of DHS requires discharge planning and coordination

8 of subsequent housing, regardless of the condition of the resident.   Moreover, no other

9 program requires consideration of factors that may negatively impact the surrounding

10 neighborhood.

11          c.      A.R.S. § 36-2062(A)(5) requires the sober living home to have a "good

12 neighbor policy to address neighborhood concerns and complaints."   This provision is

13 discriminatory because there are no requirements for other private property owners to have a

14 "good neighbor policy", even if there are drug or alcohol addicts who reside in the residence.

15          d.      A.R.S. § 36-2062(A)(8) requires the sober living home to have policies

16 and procedures to manage monies received and spent by the sober living home "in accordance

17 with standard accounting practices, including monies received from residents of the sober

18 living home."  On information and belief, no other program under the regulatory auspices of

19 DHS requires the provider to take extra steps to maintain accounting records beyond normal

20 standard of care.

21          e.      A.R.S. § 36-2062(A)(13) requires the sober living home to have policies

22 "regarding the maintenance of sober living homes, including the installation of functioning

23 smoke detectors, carbon monoxide detectors and fire extinguishers and compliance with local fire

24 codes applicable to comparable dwellings occupied by single families."  On information and

25 belief, this requirement is covered by other provisions of state and/or local governmental law like

26

zoning and fire codes.  Thus, this provision represents another example of over regulation not imposed on other groups or property owners.

41.     These provisions single out sober living homes and discriminatorily impose burdens on the operators of such homes that are not imposed on other similarly regulated groups. Indeed, when the good neighbor policies are viewed in light of legislative and community comments, it is evident that the statutes and regulations were adopted not to protect a protected disabled group, but to discriminate against them and to endanger their rights to housing in locations of their choice.

42.     The statute requires all operators of properties that meet the definition of sober living home to obtain a license issued by DHS.  The license is good for one year.  A.R.S. § 36-2062(B).

43.     A person operating a sober living home without a license from DHS is subject to a civil penalty of up to $1,000 for each violation.  A.R.S. § 36-2062(B).  On information and belief, the civil penalty the legislature established for the Sober Living Law is higher than similar civil penalties administered under the auspices of DHS.

44.     If a treatment facility licensed by DHS for substance use disorders has one or more sober living homes on the same campus as the facility's program, the so called sober living home must still get a license from DHS.  A.R.S. § 36-2062(D).  This provision triggers discrimination, even within programs like that operated by TLC.

     a.     As noted, TLC operates a licensed treatment facility.  Based on the Sober Living Law, TLC would not be able to provide housing to clients of its treatment facility if located on the same campus, unless such housing was separately licensed by DHS.

     b.     Distinguishing the location of the housing facility is discriminatory, as it creates a threat that programs like TLC may have to cease providing treatment facility services to clients if it cannot also provide housing related services to the same client.

45.     Under the Sober Living Law, "a person may not establish, conduct or maintain in this state a sober living home unless the person holds a current and valid license issued by the department . . . ."  A.R.S. § 36-2062(E).  Thus, a provider like TLC who does not obtain the required DHS license faces the risk of losing its business and, more importantly, not being able to provide the housing and recovery services its clients so desperately need.

46.     The Legislature authorized DHS to promulgate rules regarding the Sober Living Law.  The Rules are found in the Arizona Administrative Code § R9-12-101 *et. seq.* which became effective on or about July 1, 2019.

47.     Like the Sober Living Law, the Rules impose discriminatory requirements on sober living homes that are not imposed on similarly situated groups regulated by the DHS.   Examples include, but are not limited to:

a.     A sober living home must plan for the termination of residency by a client or patient "including assisting a resident to find other housing."  Ariz. Admin. Code R9-12-201(B)(3)(o)(i).

b.     A sober living home must "coordinate" the relocation of a resident to a health care institution or another sober living home or other housing option and must address "factors that may negatively impact the surrounding neighborhood."  Ariz. Admin. Code R9-12-201(B)(3)(o)(ii, iii and iv).

c.     A sober living home must ensure that a "manager" has maintained "sobriety for at least one year"; ensure that requirements for residents and visitors related to parking, noise emanating from sober living home, smoking, cleanliness of public space near the sober living home and loitering in front of the sober living home or near-by homes are "established, known to residents, and enforced".  Ariz. Admin. Code R9-12-201(B)(1)(b) and (2)(a)(i-iii).

d.     A sober living home must make sure a manager has policies and procedures to "[p]revent or address concerns of complaints from individuals living in the surrounding neighborhood" by  identifying an individual for those in the surrounding neighborhood to talk to

1  about concerns, requiring the individual to respond to the complaint "even if the issue cannot be
2  resolved".  Ariz. Admin. Code R9-12-201(B)(2)(a)(i-ii).

3        e.     On information and belief, the requirements in these Rules are not imposed
4  on similarly situated or regulated facilities and are focused on protecting the neighbors or
5  neighborhoods, not the disabled clients who reside in TLC's facilities or the facilities of other
6  sober living homes.

7      48.    A.R.S. 36-2063(A) authorizes DHS to establish fees for the initial licensure and
8  renewal licensure for sober living operators.  DHS has established a licensing fee for sober living
9  homes of $500 plus $100 times the maximum number of residents of the proposed sober living
10  home.  Ariz. Admin. Code § R9-12-103(A)(6).  On information and belief, the licensing fees (and
11  particularly the per bed multiplier) DHS has set for sober living homes is discriminatorily higher
12  than licensing amounts DHS has set for other similarly regulated facilities.  For example:

13        a.     Under A.A.C. R9-10-106((C)(1)(b) an adult day care facility, assisted living
14  home, or assisted living center that has a capacity of one to fifty-nine beds, must pay only an
15  annual license fee of $280.00, plus licensed capacity (per bed) times $70.00.

16        b.     Under A.A.C. R9-10-106(C)(2)(b), a behavioral health facility that has a
17  capacity of one to fifty-nine beds must only pay an annual license fee of $375.00, plus the
18  licensed capacity (per bed) times $94.00.

19        c.     Under A.A.C. R9-10-106(C)(4), a nursing care institution or an intermediate
20  care facility for individuals with intellectual disabilities that has a capacity of one to fifty-nine
21  beds must only pay an annual license fee of $365.00, plus the licensed capacity (per bed) times
22  $73.00.

23        d.     Under A.A.C. R9-10-106(C)(5), a hospital, home health agency, hospice
24  inpatient facility, abortion clinic, recovery center, outpatient surgical center, pain management
25  clinic, or unclassified health care institution that has a has a capacity of one to fifty-nine beds
26  must only pay an annual license fee of $375.00, plus the licensed capacity (per bed) times $94.00.

e.      All of these facilities have lower fee requirements than sober living homes.

f.      On information and belief, these other facilities can offset fee requirements by patient insurance payments, while TLC does not normally receive insurance payments for clients of the Robson House or its other similar facilities.  As such, the Sober Living Law imposes a direct licensing cost on TLC not offset by income streams available to other similarly situated facilities.

49.     Senator Kate Brophy McGee wrote a letter to the DHS on or about December 11, 2018 where she said her intent was to "give ADHS broad authority to regulate these homes to protect public health, safety and welfare."  She added at the end of her letter that "I do hope and expect that ADHS will ensure that the rules and licensing system that are developed will protect the health, safety and welfare of the neighborhoods in which these homes are located.  Consistent with that, I would ask that ADHS coordinate with local governments with respect to zoning, licensing, and information sharing."  [12/11/2018 letter from Sen. Kate Brophy McGee to ADHS (Ex. 10)]

50.     On information and belief, Senator McGee and her colleagues in the Legislature and the officials within DHS discriminatorily focused on protecting local communities to the detriment of TLC, its clients and other similarly situated sober living home providers and residents who are protected from discrimination under federal law.

**DHS' Efforts to Impose the Sober Living Law on TLC and the Robson House**

51.     DHS mailed a letter dated March 15, 2022 to Transitional Living Community at 132 S. Robson in Mesa, the address for the Robson House.  [3/15/2022 DHS Letter (Ex. 11)]

52.     The letter purported to be a "FINAL NOTICE", implying at least that there was some earlier notice from DHS to TLC.  There was no such earlier notice.  The letter purported to provide notice to TLC that it cannot operate the Robson House as a "sober living home" without a license issued by ADHS under A.R.S. § 36-2061 *et. seq*.

53.     The letter said "[w]ithin ten calendar days of receiving this letter, please submit a complete application for a sober living home license . . . or provide a written response indicating why you are not applying for a sober living home license."  TLC received the letter on March 23, 2022.  Ten calendar days from that date was Saturday April 2, 2022.

54.     Nevertheless, on March 28, 2022, two ADHS compliance officers went to the Robson House asking for a copy of a DHS license and, when TLC's CEO John Schwary told the officers TLC did not have one, the compliance officer(s) said DHS was imposing the $1,000.00 per day penalty beginning that day.

55.     One of the officers was Kevin Bishop.  The officers claimed that the 10 day period began to run from the date of the letter, even though on its face the letter said the 10 day period began to run from the date of "receiving this letter."

56.     The letter also said that if TLC did not respond to the letter, or if DHS surveyors obtained evidence that TLC was operating an unlicensed sober living home, the matter would be referred to legal counsel for action including a possible Cease and Desist order or a Notice of Civil Penalties.  The concept described in the letter suggested there would be some due process afforded to TLC before any penalties were imposed.

57.     But contrary to the language in the letter, the compliance officers purported to impose a $1,000.00 per day civil penalty without proof that TLC was operating a sober living home as defined in the statute or any process regarding DHS's claims.  Moreover, the compliance officers did not provide any notice or paperwork that would support or justify the purported imposition of the penalty against TLC.

58.     On April 1, 2022, undersigned counsel sent a letter addressed to Don Herrington as the Interim Director of DHS and Mark Brnovich as Arizona's Attorney General.  The purpose of the letter was to respond to DHS's March 15, 2022 letter and to give the State of Arizona notice of TLC's claims under A.R.S. § 12-821.01.  [4/1/2022 letter from Brooks to Herrington ("TLC Notice Letter") (Ex.12)]

59.     Among other things, the TLC Notice Letter provided information to DHS that it is TLC's position that the Sober Living Law and Rules reflects an illegal licensing scheme that violates federal law and proposed a possible settlement.  To date, DHS has not responded to TLC's proffer of settlement.

60.     Instead, DHS sent TLC a document captioned as "Cease and Desist Order; Notice of Assessment of Civil Money Penalties; and Notice of Right to Request Administrative Hearing" dated May 24, 2022.  [Cease and Desist Order (Ex. 13)]  TLC received the Cease and Desist Order on or about May 27, 2022.[1]  Through the Cease and Desist Order, DHS:

        a.     Concluded that TLC has been operating the Robson House as a sober living home without a license in violation of the Sober Living Law.

        b.     Ordered TLC to "cease and desist" all actions in violation of the Sober Living Law.

        c.     Assessed a civil penalty on TLC of $49,000 for the period from March 28, 2022 to May 16, 2022.

        d.     Notified TLC that it could request a hearing before the Arizona Office of Administrative Hearings within 15 calendar days from the date the order was received.

61.     The effect of the Cease and Desist order on TLC is that:

        a.     TLC is being coerced and/or compelled by DHS to comply with the illegal and discriminatory Sober Living Law and Rules and pay discriminatorily high licensing fees and/or face civil penalties and/or ongoing administrative proceedings within the State system;

        b.     TLC will have to cease its operation at the Robson House which would mean approximately 43 female clients of TLC who are trying to overcome their addictions would lose their housing and access to recovery services.  On a broader scale, if the Cease and Desist

---

[1]  The Cease and Desist Order was directed to "TLC Business Services, LLC, dba TLC/Transitional Living Communities".  TLC Business Services, LLC does not own or operate the Robson House and TLC reserves all rights regarding the naming of an inaccurate entity.  TLC does not waive this position by discussing the Cease and Desist Order here.

1    Order is read to cover all of TLC's operations, then approximately 576 clients who are trying to

2    overcome their addictions stand to lose their housing and access to recovery services;

3                    c.      TLC could lose its business, built up over thirty years and would be

4    prevented from helping drug and alcohol addicts in the future;

5                    d.      TLC and its staff are faced with the diversion of their time and efforts to

6    address DHS's claims, instead of focusing on helping TLC's clients to overcome their addictions.

7            62.     TLC sent a request for hearing to DHS on or about June 9, 2022.  In doing so, TLC

8    expressly indicated that it did not waive its position or right to argue that the Sober Living Law

9    and Rules discriminatorily violate federal law.

10                              **Count One**

11                  **Violation of Fair Housing Law and Regulations**

12           63.     Plaintiff incorporates the allegations of paragraphs 1 to 62 as if stated in full herein.

13           64.     Congress amended the Fair Housing Act (42 U.S.C. § 3601 *et seq.*) in 1988 to

14    extend the guaranty of fair housing to handicapped individuals.

15           65.     Under the Fair Housing Act, "handicap" means a person with a "physical or mental

16    impairment which substantially limits one or more of such person's major life activities."  The

17    term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than

18    caused by current illegal use of a controlled substance)".  *See* 24 C.F.R. § 100.201.

19           66.     Under the Fair Housing Act, it is unlawful to discriminate, make unavailable, or

20    deny a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person

21    residing in or intending to reside in that dwelling, or any person associated with that buyer or

22    renter."  42 U.S.C. § 3604(f)(1).

23           67.     Under the Fair Housing Act, it is unlawful "[t]o discriminate against any person in

24    the terms, conditions, or privileges of sale, rental of a dwelling, or in the provision of services or

25    facilities in connection with such a dwelling, because of a handicap of—(A) that buyer or renter,

26

(B) a person residing in or intending to reside in that dwelling after it so sold, rented or [was] made available; or (C) any person associated with that buyer or renter." 42 U.S.C.§ 3604(f)(2).

68.     Under the Fair Housing Act, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

69.     Under the Fair Housing Act, it is unlawful to make, print, publish, or cause "to be made, printed, or published a statement in connection with the sale or rental of housing that indicates a limitation, preference, or discrimination on the basis of disability." 42 U.S.C. § 3604(c).

70.     Under the Fair Housing Act, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606" of Title 42. 42 U.S.C. § 3617.

71.     Under the Fair Housing Act, "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this title shall to that extent be invalid." 42 U.S.C. § 3615.

72.     The Sober Living Law and Rules discriminate against TLC and its clients by, among other things:

a.     Imposing good neighbor and discharge planning requirements on TLC when no other similarly situated groups have to do likewise.

b.     Imposing requirements on TLC regarding accounting and maintenance practices that are not imposed on similarly situated groups and/or reflect over regulation because such issues are regulated otherwise.

c.      Imposing the requirement that TLC apply for a license under the Sober Living Law, when such statute and its regulatory scheme violate the Act by discriminating against TLC and its clients or face cease and desist orders, fines and having to defend itself in a DHS administrative proceeding.

d.      Imposing licensing fees that discriminatorily exceed the fees charged by DHS for other similarly regulated facilities.

e.      Printing and publishing the Sober Living Law and related Rules that are facially discriminatory and interfere with TLC's ability to provide housing and recovery services to its clients.

73.      DHS and Interim Director Herrington violated the Fair Housing Act through retaliatory tactics and fines designed to coerce and compel TLC to comply with the Sober Living Law, or face the risk of having to cease its operations and ask its clients to leave the Robson House and other facilities operated by TLC as called for in the Cease and Desist Order.  They also violated the Fair Housing Act by imposing a civil penalty by oral comment from the DHS compliance officer when the time to respond to the March 15, 2022 letter from DHS had not even run and in the Cease and Desist Order.

74.      Because the Sober Living Law and accompanying Rules are facially discriminatory and/or because DHS has caused disparate treatment against TLC, its clients and others similarly situated, TLC is entitled to (i) declaratory relief that the statute and rules violate the Fair Housing Act; (ii) preliminary and permanent injunctive relief that enjoins DHS and Interim Director Herrington from enforcing the Sober Living Laws and Rules and the Cease and Desist Order (including the assessment of a civil fine) against TLC; and (iii) for damages.   42 U.S.C. § 3613(c)(1).

1    75.    As to injunctive relief:

2           a.    Plaintiff is likely to succeed on the merits, as the Sober Living Law and

3    related rules are facially discriminatory and violate the Fair Housing Act as alleged in paragraphs

4    20 to 62.

5           b.    Plaintiff will suffer irreparable harm if injunctive relief is not granted, in

6    that it will have to cease operations at Robson House, and perhaps all of TLC's operations which

7    would result in TLC clients who have chosen to reside in TLC facilities to overcome their drug

8    and/or alcohol addictions losing their housing and the services associated with that housing.

9    Moreover, TLC will suffer irreparable harm in terms of losing its business and, more importantly,

10   not being able to pursue its 30 plus year mission to help those disabled persons suffering from

11   drug and alcohol addiction.

12          c.    Alternatively, TLC is entitled to injunctive relief because there are serious

13   questions in this case that go to the merits of the case and the balance of hardships tip in

14   Plaintiff's favor.   As to the merits, the Sober Living Law and related rules are facially

15   discriminatory as outlined in paragraphs 20-62.  The balance of hardships cuts in Plaintiff's favor

16   because TLC clients who have chosen to reside in TLC facilities to overcome their drug and/or

17   alcohol addictions face losing their housing and the services associated with that housing.

18   Moreover, TLC will suffer harm in terms of losing its business and, more importantly, not being

19   able to pursue its 30 plus year mission to help those disabled persons suffering from drug and

20   alcohol addiction.

21   76.    As to damages, Plaintiff seeks the declaratory and injunctive relief noted above, but

22   also alleges as an alternative that DHS's efforts to force TLC to comply with the Sober Living

23   Law and Rules, together with the Cease and Desist order has proximately caused damage to TLC

24   that includes (i) value of time for TLC staff to address and deal with DHS's demands; (ii) value

25   of lost income and/or business related to the Cease and Desist Order;  and (iii) attorney's fees

26   incurred to combat DHS's claims including this case and any administrative proceedings.  *See*

1  *Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1167 (9th Cir. 2012)

2  (noting that fees may be recoverable as damages).

3      77.    Plaintiff is entitled to attorney's fees under 42 U.S.C. 3613(c)(2).

4                                    **Count Two**

5        **Violation of the Americans With Disabilities Act and Regulations**

6      78.    Plaintiff incorporates the allegations in paragraphs 1 to 77 as if stated in full herein.

7      79.    Under the Americans with Disabilities Act ("ADA") codified at 42 U.S.C. §

8  12132, "no qualified individual with a disability shall, by reason of such disability, be excluded

9  from participation in or be denied the benefits of the services or programs, or activities of a public

10 entity, or be subjected to discrimination by any such entity."

11     80.    Under 42 U.S.C. § 12131(1), a "public entity" is any State, local government or

12 department, like DHS.

13     81.    Under 28 C.F.R. § 35.130(a)(3)(i), a public entity may not directly or through other

14 arrangements "utilize criteria or methods of administration" "[t]hat have the effect of subjecting

15 qualified individuals with disabilities to discrimination on the basis of disability."

16     82.    Under 28 C.F.R. § 35.130(a)(6), a "public entity" is prohibited from administering

17 a licensing program "in a manner that subjects qualified individuals with disabilities to

18 discrimination on the basis of disability, nor may a public entity establish requirements for the

19 programs and activities of licensees that . . . subject qualified individuals with disabilities to

20 discrimination on the basis of disability."

21     83.    Under 28 C.F.R. § 35.130(a)(4)(i), a "public entity" is prohibited from determining

22 site of facility locations "that have the effect of excluding individuals with disabilities," "denying

23 them benefits of, or otherwise subjecting them to discrimination" of any kind.

24     84.    The Sober Living Law and Rules violate the ADA and accompanying regulations

25 by directing DHS to administer a "licensing or certification program in a manner that subjects

26

qualified individuals with disabilities to discrimination on the basis of disability."   DHS violates the ADA and regulations by:

      a.    Imposing good neighbor and discharge planning requirements on TLC when no other similarly situated groups have to do likewise.

      b.    Imposing requirements on TLC regarding accounting and maintenance practices that are not imposed on similarly situated groups and/or reflect over regulation because such issues are regulated otherwise.

      c.    Imposing the requirement that TLC apply for a license under the Sober Living Law, when such statute and its regulatory scheme violate the ADA by discriminating against TLC and its Clients.

      d.    Imposing licensing fees that discriminatorily exceed the fees charged by DHS for other regulated facilities.

      e.    Establishing requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability.

      f.    Imposing a licensing program, including inspections, that have the effect of denying individuals with disabilities the benefits of living where they choose to live so they can recover from drug and/or alcohol addiction and enjoy the services related to such recovery.

85.    Because the Sober Living Law and rules are discriminatory, both on a facial and/or as applied basis, TLC is entitled to: (i) declaratory relief that the statute and rules violate the ADA and accompanying regulations; (ii) preliminary and permanent injunctive relief that enjoins DHS and Interim Director Herrington from enforcing the Sober Living Laws and Rules and the Cease and Desist Order (including the assessment of a civil fine) against TLC; and (iii) for damages.

86.    The protections provided by the Fair Housing Act and the ADA extend to people recovering from drug or alcohol addiction.  As such, courts interpret ADA and Fair Housing claims in tandem.  *Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2012).

87.     As to Plaintiff's claim for injunctive relief under the ADA, the allegations in paragraphs 20-77 regarding violations of the Fair Housing Act apply similarly to Plaintiff claim for injunctive relief under the ADA.

### Count Three

### Violation of the Federal Rehabilitation Act

88.     Plaintiff incorporates the allegations of paragraphs 1 to 87 as if stated in full herein.

89.     Under the Federal Rehabilitation Act, codified at 29 U.S.C. § 794, no qualified individual with a disability shall be excluded from participating in, denied the benefits of, or be subject to discrimination under any program receiving federal financial assistance on the basis of disability.

90.     On information and belief, DHS and Interim Director Herrington receive federal funding to administer the Sober Living Law and accompanying Rules.

91.     Accordingly, since the Sober Living Law and Rules require sober living homes to comply with "good neighbor" or discharge policies when no other similarly situated disabled group home has to do likewise, and comply with similar policies as noted herein, TLC and its clients are discriminated against by a program that receives federal funding.

92.     Because the Sober Living Law and Rules are discriminatory, both on a facial and/or as applied basis, TLC is entitled to: (i) declaratory relief that the statute and rules violate the Rehabilitation Act and accompanying regulations; (ii) preliminary and permanent injunctive relief that enjoins DHS and Interim Director Herrington from enforcing the Sober Living Laws and Rules and the Cease and Desist Order (including the assessment of a civil fine) against TLC; and (iii) for damages.

### Count Four

### Violation of Equal Protection Clause and Section 1983

93.     Plaintiff incorporates the allegations of paragraphs 1 to 92 as if stated in full herein.

94.     The Fourteenth Amendment to the United States Constitution provides that the State shall not deprive "any person within its jurisdiction the equal protection of the laws."

95.     DHS, acting through its employees/agents and under color of state law, deprived Plaintiff of its constitutional right to equal protection as follows:

      a.     Imposing good neighbor and discharge planning requirements on TLC when no other similarly situated groups have to do likewise.

      b.     Imposing requirements on TLC regarding accounting and maintenance practices that are not imposed on similarly situated groups and/or reflect over regulation because such issues are regulated otherwise.

      c.     Imposing the requirement that TLC apply for a license under the Sober Living Laws, when such statute and its regulatory scheme violate TLC's rights to equal protection by discriminating against TLC and its Clients.

      d.     Imposing licensing fees that discriminatorily exceed the fees charged by DHS for other regulated facilities.

96.     DHS was indifferent to TLC's rights as noted above.

97.     The Sober Living Laws and Rules reflect a policy that violates TLC's constitutional rights.

98.     The Sober Living Laws and regulations reflect the moving force reflecting DHS's violation of TLC's rights.

99.     Defendants' conduct violates 42 U.S.C. § 1983.

100.     Defendants' conduct has proximately caused damages to Plaintiff in an amount to be proven at trial.

101.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to attorney's fees and/or expert witness fees.

1

## <u>Demand for Jury Trial</u>

2         Pursuant to Rule 38(b)(1) of the Federal Rules of Civil Procedure, TLC requests a trial by

3   jury.

4         **WHEREFORE,** Plaintiff respectfully requests that this Court:

5         A.    Enter judgment in favor of Plaintiff declaring that the Sober Living Law and its

6   accompanying Rules in A.R.S. § 36-2061 *et seq.* and Ariz. Admin. Code R9-12-101 *et seq.* are

7   discriminatory on their face and/or as applied against Plaintiff and violate the Fair Housing Act,

8   the ADA and/or the Federal Rehabilitation Act and,  is therefore invalid;

9         B.    For preliminary and/or permanent injunctive relief prohibiting DHS and Interim

10  Director Herrington from enforcing the Cease and Desist Order against Plaintiff and/or from

11  taking any other action to enforce the Sober Living Law and accompanying Rules against

12  Plaintiff;

13        C.    For compensatory damages as alleged herein, including without limitation,

14  attorney's fees;

15        D.    Award attorney's fees and costs pursuant to law, including without limitation,

16  under 42 U.S.C. § 3613(c)(2) and 42 U.S.C. § 1988.

17        E.    For such other relief as the Court deems proper in the circumstances.

18

19        DATED this 9th day of June 2022.

20                 BROOKS & AFFILIATES, PLC

21
               By: */s/ David P. Brooks*
22                    David P. Brooks
                  4320 East Brown Road #111
23                    Mesa, AZ 85205
                  dbrooks@brooksandaffiliates.com
24

25                 Attorneys for Plaintiff

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**<u>Verification</u>**

I, John Schwary, am over the age of 18.   I am the founder and CEO of TLC/Transitional Living Communities and have reviewed the above complaint.   I verify, under penalty of perjury under the laws of the State of Arizona and the United States of America, that the facts regarding TLC as alleged above are true and accurate to the best of my knowledge, information and belief.   As to all other facts alleged herein, I believe them to be true.

Dated:  June 9, 2022                                                  /s/*<u>John Schwary</u>*